CLERK'S COPY

COPY

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN - 8 1999

Robert M. march

CLERK

REX BAKER, et al.,                    )
                                      )
            Plaintiffs,               )
                                      )        CIV. 93-140 BB/RLP
      v.                              )
                                      )
BARNARD CONSTRUCTION CO.,             )        MEMORANDUM OPINION
INC., et al.,                         )
                                      )
            Defendants.               )
_____)

This matter is before the Court on plaintiffs' application for award of attorneys'

fees and costs (Filing No. 809).  Plaintiffs are rig welders who were formerly employed by

either Four-Way Company, Inc. (Four-Way) or Foutz & Bursum Construction Company (Foutz

& Bursum), or both.  Plaintiffs originally filed this case on February 5, 1993, alleging that

defendants failed to pay wages and overtime compensation in violation of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq.  Since that time this case has been before the

district court for trial on two occasions and before the Tenth Circuit Court of Appeals.  On

November 16, 1998, the Court issued a memorandum opinion and order finding for the plaintiffs.

Pursuant to that order, plaintiffs have filed an application for fees and costs.  In addition,

plaintiffs have also filed a bill of costs with the office of the clerk of this Court seeking recovery

of taxable costs.

## I. BACKGROUND

In their complaint, plaintiffs alleged that Four-Way and Foutz & Bursum violated

the FLSA, by improperly apportioning their wages and rig rental, and by failing to pay overtime

wages for travel time.  There were originally ten defendants in this case.  By May 1996, all of the

defendants except Four-Way and Foutz & Bursum had reached settlement agreements with plaintiffs. The case proceeded to trial before a jury in May 1996 against only these two defendants. Plaintiffs were represented by the Gallegos Law Firm, on a contingency fee basis. At trial, which lasted five days, plaintiffs pursued two claims: (1) unpaid travel time, and (2) a challenge to defendants' wage apportionment or split-check system of payment. The jury found in favor of the defendants on both claims. Plaintiffs appealed to the Tenth Circuit the judgment regarding unpaid travel time. The Gallegos Law Firm was not involved in the appeal. (Condon Affidavit ¶ 10). Mr. K. Lee Peifer and Mr. David Mark were appellate counsel for plaintiffs. *Id.* The Tenth Circuit found that the trial court had erred in its jury instruction relating to travel time and remanded for a new trial. *See Baker v. Barnard Constr. Co., Inc.*, 146 F.3d 1214 (10th Cir. 1998). The split-check system issue was not appealed, and this Court ruled, applying the rule of the law of the case, that the split-check issue was not before the Court on re-trial. Following re-trial to the Court on October 26-27, 1998, the parties submitted proposed findings of fact and conclusions of law. The Court entered judgment for the plaintiffs in the amount of $15,330.00 against Four-Way, and $54,752.50 against Foutz & Bursum. This judgment included amounts for liquidated damages.

## II. DISCUSSION

Plaintiffs are entitled to attorneys' fees under the FLSA, which provides: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The starting point for determining an award of attorneys' fees is the "lodestar" amount which is computed by multiplying the number of hours reasonably expended on the

2

litigation by a reasonable hourly rate. *Case v. Unified School District No. 233,* 157 F.3d 1243, 1249 (10th Cir. 1998). *See also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983).

Plaintiffs seek an award of attorneys' fees, including paralegal time, in the amount of $181,849.37. This amount includes trial attorney and staff fees of $157,035.87 plus appellate counsel fees of $24,813.50. Plaintiffs also seek an award of costs and expenses totaling $20,324.86. This is the same amount as is set forth in the bill of costs which plaintiffs have filed with the clerk's office. On January 13, 1999, the Clerk awarded plaintiffs the sum of $20,324.86 as taxable costs. There has been no appeal from this award, and the issue of costs is no longer before the Court. Plaintiffs' counsel represent that the value of actual time expended in this case exceeds $500,000. (Condon Aff. ¶ 13).

## A. Number of Hours

The first step in calculating a fee award is to determine the number of hours reasonably spent by counsel. *Ramos*, 713 F.2d at 553. The court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation. *Id.* In determining what is a reasonable time in which to perform a given task or to prosecute the litigation as a whole, the court should consider: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The Court will address these factors as it examines the billing entries in more detail.

## 1. Trial Counsel

In calculating the amount of fees for trial counsel, the Gallegos Law Firm reviewed its records and gathered all billing entries which related to Four-Way, Foutz & Bursum or general matters which involved these defendants. (*See* Condon Aff. ¶ 4). Plaintiffs' counsel asserts that they did not include billing entries which related solely to other defendants. *Id.* Plaintiffs' counsel submitted these entries to the Court. Each entry identifies the person performing the work, the date of the work, the billing rate, a description of the work performed, and a "conversion factor." (Condon Aff. ¶ 6). This conversion factor is a multiplier that plaintiffs used to allocate the fees incurred to Four-Way and Foutz & Bursum. As this case started out with ten defendants, the time expended on general matters while all ten were still parties is allocated on the basis of 2/10ths of that time being chargeable to Four-Way and Foutz & Bursum. Throughout the case, counsel continued to use a factor representing the number of defendants in the case. This factor is represented in the supporting documentation they submitted with their application and is in part included in the summaries which the Court has included in this memorandum opinion. Plaintiffs settled with five of the defendants by December 1994: Four-Four, TIC, Davey McKee, Barnard Construction and Mountain West. (Condon Aff. ¶ 6). This left five defendants in the case; Four-Way and Foutz & Bursum were two. Therefore, for general matters from this time forward plaintiffs applied a conversion rate of 4/10ths. Defendant Elkhorn settled in April 1995. *Id.* Of the remaining four defendants, Four-Way and Foutz & Bursum accounted for half. As a result, Four-Way and Foutz & Bursum were charged 5/10ths of general matters after April 1995. However, while these conversion factors were applied to general matters, any billing matters throughout the case, which pertained solely

4

to Four-Way and Foutz & Bursum used a conversion factor of 1. For example, in March and April 1993, work on summary judgment motions filed by Four-Way and Foutz & Bursum used a conversion factor of 1. For other entries, plaintiffs' counsel applied a conversion factor based on the percentage of work which related to Four-Way and Foutz & Bursum. In April 1996, defendants Flint and Pioneer settled. *Id.* After April 1996, Four-Way and Foutz & Bursum were the only remaining defendants and the conversion factor was 1 throughout the rest of the case, at least as adjusted for multiple defendants.[1] The Court finds that these conversion factors are appropriate.

To calculate the number of hours for the lodestar amount, the Court will examine whether the hours submitted by trial counsel were reasonable. A summary of trial counsel's billing entries follows:

### Hours of Trial Counsel

| Dates | Hours | Conversion Factor | Converted Hours | Description |
|-------|-------|-------------------|-----------------|-------------|
| January 5, 1993 through February 5, 1993 | 129.75 | .2 | 25.95 | Prepared and filed complaint on Feb. 5, 1993. Most work billed by Sandoval ($110), Theriot ($60) and various paralegals. |
| February 8, 1993 through March 12, 1993 | 45.50 | .2 | 9.1 | Contacted plaintiffs, gathered documents, damage estimates. |
| March 13, 1993 through April 30, 1993 | 338.65 | variable | 123.00 | Responded to defendants' motions for summary judgment, motion to compel, protective order, motion to dismiss, and other motions; drafted cross-motion for summary judgment. |

---

[1] Plaintiffs' counsel reduced their hours for trial preparation and the trial in May 1996 and June 1996 due to partial success, but this adjustment will be discussed later.

| | | | | |
|---|---|---|---|---|
| July through August 1993 | 11.75 | .2 | 2.35 | Drafted a motion to allow discovery and prepared affidavits. |
| September 2, 1993 through December 2, 1993 | 70.00 | .2 | 14.7 | Attended hearing before J. Burciaga on summary judgment motions (9/93), drafted responses to summary judgment, drafted notice for class action and brief. |
| January 18, 1994 through May 1994 | 28.75 | .2 | 5.75 | Worked on discovery issues, motion to compel, motion to consolidate, and traveled to Albuquerque to attend union conference and give presentation. |
| June 1994 through August 1994 | 21.25 | .2 | 4.25 | Worked on settlement demand letters and settlement conference. |
| October 1994 through December 1994 | 63.00 | from .5 to 1 | 55.19 | Responded to defendants' interrogatories and requests for production; revised damage estimates. |
| January 1995 through March 1995 | 208.00 | variable | 114.35 | Prepared for and attended depositions in Farmington and Albuquerque. Responded to defendants' requests for production, and protective order; researched willful violations; drafted motion to strike defendants' experts; drafted jury instructions. |
| May 1995 | 100.75 | mostly .5 | 48.69 | Condon begins work ($180). Prepared for a June 1, 1995 hearing; researched statute of limitations, FLSA work performed on Indian reservations, possible additional claim of retaliation under FLSA, and discovery issues in FLSA cases; made various telephone calls; attended a deposition; revised damage estimates; determined which plaintiffs did not file interrogatory responses. |

| | | | | |
|---|---|---|---|---|
| August 1995 through December 1995 | 54.50 | mostly 1 | 50.5 | Responded to defendants' motion for sanctions, objections to discovery requests; revised damages for interrogatories; researched FLSA issues; and made various phone calls to plaintiffs re discovery and status. |
| February 1996 through April 1996 | 267.75 | .5 | 133.88 | Condon made various phone calls; worked on amended complaint and brief; researched joint and several liability and employer liability under FLSA; assembled documents for exhibit list; prepared for settlement conference. Mr. Oja ($190) begins billing at end of March 1996. He drafted jury instructions, researched FLSA, briefed motions in limine, prepared expert witnesses for trial, and drafted the trial brief. |
| May 1996 through June 1996 *(trial and post-trial motions)* | 216.50 | mostly .5 | 108.71 | Condon continued making calls, and drafting settlement letters. Oja drafted a second trial brief regarding willful violations. Oja and Gallegos prepare for and attend trial. Oja and Gallegos draft motion for new trial. |
| October 1998 through November 2, 1998 *(second trial)* | 272.25 | 1 | 272.25 | Worked on jury instructions, motion for continuance, motions in limine; researched FLSA issues; conference with Judge Strom regarding defendants' motion for summary judgment, and motion to reconsider; prepared witnesses and attended trial. After trial, worked on Findings of Fact and Conclusions of Law and closing memo in lieu of closing argument. |
| December 1998 *(fee application)* | 33.75 | 1 | 33.75 | Work on fee application, affidavits and supporting brief. |

| Total Hours Worked | 1853.9 | | 994.17 | |
|---|---|---|---|---|

The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The Tenth Circuit has stated that more than 100 hours spent to draft a complaint demands explanation. *Ramos*, 713 F.2d at 554. The adversary should not be required to pay for more than the normal time the task should have required. *Id.* at fn. 3. Absent any explanation and because 129.75[2] hours appears excessive to prepare a complaint, the Court reduces this amount to 100 hours, or 20 converted hours.

Several other periods of time containing numerous hours require discussion. For instance, in March and April 1993, counsel spent 123 converted hours responding to defendants' numerous motions, including a motion for summary judgment, a motion to compel, a motion for a protective order, and a motion to dismiss. Plaintiffs' counsel also drafted their cross-motion for summary judgment. Most of the work during this time period was initiated by defendants, and the Court finds that plaintiffs' counsel's hours were reasonable. In addition, from January 1995 through March 1995, plaintiffs' counsel spent 114.35 converted hours preparing for and attending several depositions in Farmington and Albuquerque, New Mexico. Counsel also responded to Four-Way's and Foutz & Bursum's requests for production. Because of the numerous depositions and other discovery work during this time, these hours appear reasonable.

---

[2] The Court recognizes that this is a case of first impression. Accordingly, including 100 hours for preparation of the complaint appears reasonable.

It should be noted that most of the early work on this case from January 1993 to March 1995 was performed by younger associates of the Gallegos Law Firm, David Sandoval and Glen Theriot. Most of the summary judgment and other motion work, as well as depositions, occurred during this time in early 1993 through early 1995. When these attorneys left the firm, Michael Condon handled most aspects of this case at a rate of $180 per hour. Throughout the case, Mr. Gene Gallegos only handled general supervision and the most important aspects of the case, such as some depositions, hearings and the trials. Condon billed at higher rates than Sandoval and Theriot because he was more experienced. From February 1996 through April 1996, Condon seems to have been the person in charge of making phone calls to plaintiffs and witnesses and arranging settlements. Starting in March 1996, Michael Oja was the attorney primarily responsible for the legal arguments and trial briefs. He was apparently working in Denver and his early work involved reviewing the case file.

Defendants argue that they should not be charged for the time Condon and Oja billed to become acquainted with the facts of this case. The Tenth Circuit has stated that the court should exclude from a fee request hours that are redundant or otherwise unnecessary. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Because Condon's and Oja's early work involved reviewing documents in the case file and duplication of services already performed by Sandoval and Theriot, the Court will reduce Condon's time by 17.625 converted hours from May 1995 through May 1996. The Court will reduce Oja's time for reviewing the case file by 9.625 converted hours from March 1996 through June 1996.

Defendants also argue that the hours spent for the second trial were excessive because there were no real contested facts during the second trial, except the distances plaintiffs

9

had to travel from the job-site to their homes at the end of the work day. The defendants claim that plaintiffs cited the same case law to the Tenth Circuit and the trial court on remand. The Court agrees. The Court notes that plaintiffs' counsel spent 216.50 unconverted hours for the first trial in May 1996 and for post-trial motions, at a time when two legal issues consumed this case. The second trial involved only the travel time issue, and after the Tenth Circuit's opinion, the only question counsel needed to address was whether plaintiffs' travel time was an integral and indispensable part of their job. Moreover, the second trial took only half the time of the first trial. The Court concludes that 272.25 hours is an unreasonable amount of time spent to prepare and present this case a second time. Thus, counsel's time will be reduced to 100 hours for this work in October through early November 1998. This time reduction will be allocated as follows: Condon's hours will be reduced from 89 hours to 32 hours; Oja's hours will be reduced from 51.5 to 23 hours; Gallegos' hours will be reduced from 84.75 to 32 hours; paralegals' time will be reduced from 47 hours to 13 hours.

Finally, plaintiffs seek an award for time spent preparing this application for attorneys' fees. This includes 33.75 hours of work on the application for attorney fees, affidavits, and supporting brief. An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application. *Case*, 157 F.3d at 1254. This amount of time appears reasonable. *Id.* (concluding that eighty hours spent preparing attorney fee request was not excessive given the voluminous billing entries and lengthy briefs).

### 2. Law Clerks and Paralegals

The Tenth Circuit has recognized "the increasingly widespread custom of separately billing for the services of paralegals and law students who serve as clerks," but require the district court to "determine whether law clerk and paralegal services are normally part of the office overhead in the area, and thus already reflected in the normal area billing rate the court has established in the case." *Ramos*, 713 F.2d at 559. "If those services are . . . not reflected in the area rate, the court may award them separately as part of the fee for legal services." *Case*, 157 F.3d at 1249. Condon asserts that it is the general practice in this community for law firms to charge clients hourly rates for paralegal and other staff. (Condon Aff. ¶ 11). Condon's Affidavit does not address whether law clerks are accounted for in the firm's overhead. Because Four-Way and Foutz & Bursum do not dispute these fees, the Court will allow the 138.14 converted hours of paralegal time (already modified by the partial success adjustment below).

### 3. Appellate Counsel

Plaintiffs are also requesting fees for time spent by their appellate counsel. Plaintiffs assert that they did not seek assessment of fees in the Tenth Circuit because they contend that the FLSA provides for attorney fees only after a violation has been proven. 29 U.S.C. § 216(b). The appellate work was performed by K. Lee Peifer, an attorney in New Mexico, and David Mark, an attorney from the state of Washington. Mr. Peifer states that his regular hourly rate is $165 per hour, but he generally charges a reduced rate of $125 per hour, as he did in this case, for labor-related matters. (Peifer Aff. ¶ 5). Peifer's role in the instant case was to discuss appellate issues with the clients, review the trial record, respond to Mr. Mark's

inquires concerning factual matters, draft the fact sections and edit the briefs, and assist in oral argument preparation. Peifer's associate also billed time for this case at a rate of $100 per hour.

Mr. Mark was generally responsible for spotting possible appellate issues, briefing those issues, making recommendations regarding appeal, drafting briefs and arguing the appeal. Since May 1993, he has done primarily wage and hour law. A summary of appellate counsel's billing entries follows:

**Appellate Counsel**

| Attorney | Dates | Hours | Conversion Factor | Converted Hours | Total fee charged | |
|---|---|---|---|---|---|---|
| Mr.Peifer | Sept. 1996 to May 1997 | 60.1 | | | $7512.50 | Drafted notice of appeal, assembled supporting papers, drafted request for transcript, filed admission papers to 10th Cir. for Mr. Mark, prepared exhibits and pleadings, prepared appendix, drafted remaining sections of brief. |
| Peifer's associate | Sept. 1996 to May 1997 | 15.0 | | | $1500 | Drafted docketing statement, legal research, and review of 10th Cir Rules |
| **TOTAL** | | 75.1 | | | $9012.50 | |
| | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mr.Mark | Aug -Oct. 1996 | 11.6 | 50%[3] | 5.75 | | Gathered facts from counsel and identified appealable issues |
| | Nov. 1996 | 6.3 | | | | Researched and drafted brief |
| | Jan. 1997 | .2 | | | | Reviewed FRAP and local rules |
| | May 1997 | 35.7 | 85%[4] | 30.0 | | Worked on brief |
| | June 1997 | 1.3 | | | | Reviewed defendant's brief |
| | July 1997 | 24 | 85% | 20.0 | | Drafted reply brief with defendant's new issues |
| | Sept. 1997 | 1.5 | | 1.0 | | Drafted settlement conference report |
| | Nov. 1997 | 36.7 | 66-2/3%[5] | 24.0 | | Submitted supplemental authority and presented oral argument. Travel to Denver (50% for non-working time). |
| | Plus | 1.0 | | | | Prepared fee application |
| **TOTAL** | | 117.1 | | 89.55 | $15,671.25 | |
| **TOTAL requested appellate fee** | | | | | $24,683.75 | |

---

[3] Reduced by 50% because he was considering two issues on appeal, but only appealed one of them. (Mark Aff. ¶ 14).

[4] Reduced by 15% because he was unfamiliar with the appellate process. (Mark Aff. ¶ 14).

[5] Reduced by 33% to account for his lack of oral argument experience, his relative inefficiency in this area and his being overcautious. (Mark Aff. ¶ 14).

Defendants argue that appellate counsel spent a lot of time becoming familiar with the facts of the case. Defendants contend that they should not be forced to pay for the inefficiencies of having attorneys other than trial counsel handle the appeal. As stated above, the Court should exclude from a fee request hours that are redundant. *Robinson*, 160 F.3d at 1281. The Court finds that Peifer's hours should be reduced by 3.2 hours, and Peifer's associate's hours should be reduced by 1 hour to account for time reviewing the case file. Similarly, approximately 3.0 hours, or 1.5 converted hours, of Mr. Mark's time was spent reviewing documents and gathering factual information about the case. His time should be reduced by 1.5 converted hours.

## B. Hourly Rate

Plaintiffs' counsel submitted to the Court billing entries reflecting the hourly rate charged at the time the work was performed. Thus, the rates submitted to the Court varied over time:

| Attorneys | Hourly Rate | | Paralegals/Staff | Hourly Rate |
|---|---|---|---|---|
| J. E. Gallegos | $230 - $300 | | Caroline C. Woods | $45 - $60 |
| Michael J. Condon | $180 - $200 | | Sandra Arrison | $20 |
| Michael L. Oja | $160 - $200 | | Julie L. Hall | $40 |
| David Sandoval | $110 | | Tom M. Hill | $40 |
| Glenn Theriot | $60 | | Cynthia Shepard | $20 |
| Slate J. Stern | $60 | | Amy Pena | $25 - $36 |
| K. Lee Peifer | $125 | | Janice McVay | $20 |
| Peifer's Associate | $100 | | | |
| David Mark | $175 | | | |

However, the Tenth Circuit has stated that "The hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Ramos*, 713 F.2d at 555. This approach accounts for the fact that lawyers usually are not paid for their services until the court makes its allowance, and using current rates "roughly approximate[s] periodic compensation adjusted for inflation and interest." *Id.* The Court must also determine that rate in the area in which the court sits." *Id.* Thus, the Court will determine a reasonable hourly rate for each attorney or paralegal based upon current rates in the Albuquerque, New Mexico, area.

The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time. *Case*, 157 F.3d at 1256. When a district court is presented with sworn affidavits from both parties that the market commands rates at a certain level, the court must elevate the dictates of the market above its customary rate. *Id.* at 1256 (holding that the district court abused its discretion by ignoring the market rate evidence before it and applying its own customary rates). Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate. *Id.* at 1257. The district court should consider the affidavits and grant rates in accordance with one or more of them or arrive at a compromise among them, or in the alternative, set the rate according to other competent market evidence. *Id.* at 1257.

Plaintiffs submitted the Affidavit of Joseph Goldberg, an attorney, in Albuquerque, New Mexico. He stated that the standard hourly rate for senior attorneys in his

law firm ranges from $225 to $275. (Goldberg Aff. ¶ 4). The junior attorneys have a standard

hourly rate ranging from $150 to $190. *Id*. Defendants submitted the Affidavit of Michael

Campbell, an attorney in Santa Fe, New Mexico. His hourly rate as a senior attorney with more

than 20 years of experience ranges from $200 to $250. (Campbell Aff. ¶ 4). Other partners in

his firm with over twenty years experience charge $185 to $225 per hour. *Id*. An attorney at his

firm with twenty years experience charges between $160 to $200 per hour. *Id*. Billing rates for

their junior partners range between $150 to $180 per hour. (Campbell Aff. ¶ 5). Rates for

associates range from $120 to $150 per hour. *Id*. Rates for paralegals at their firm are $50 to

$60 per hour. *Id*.

   Mr. Gallegos is the senior partner at the Gallegos Law Firm. According to the

market evidence submitted, the Court finds that a reasonable rate for work performed by Mr.

Gallegos would be $230 per hour. Mr. Oja has practiced law for approximately fifteen years,

and Mr. Condon for eighteen years. The Court finds that a reasonable hourly rate based upon the

market evidence for these two attorneys would be $180. Defendants do not challenge the hourly

rate of Mr. Peifer at $125 per hour, Mr. Peifer's associate at $100 per hour, Mr. Sandoval at

$100 per hour, Mr. Theriot at $60 per hour or Mr. Stern at $60 per hour. Mr. Mark has twenty

years of experience, and since 1993 has become very knowledgeable in wage and hour law. The

Court finds that a reasonable hourly rate for Mr. Mark would be $180 per hour in the

Albuquerque area. Based on the affidavit of Mr. Campbell, the Court finds that a reasonable

current rate for paralegal services is $50 per hour. The Court will use these rates in computing

the "lodestar" amount. Because the plaintiffs incorporated into the conversion factor an

adjustment for partial success, the Court will not produce total calculations until after this discussion.

## C. Adjustments to the Lodestar Amount

### 1. Partial Success

The Supreme Court has stated that if a plaintiff fails to prevail on claims "unrelated" to those on which he or she succeeds, work on the unrelated unsuccessful claims cannot be compensated. *Hensley v. Eckerhart*, 461 U.S. at 440, 103 S.Ct. at 1943; *Ramos*, 713 F.2d at 556. For billing entries from May 1, 1996 to June 1, 1996, which was the period for trial preparation and trial, plaintiffs' counsel used a multiplier of 5/10ths to account for only partial success. This 50% discount accounts for the fact that plaintiffs received an adverse decision on the split-check claim, which was not appealed.

Defendants argue that a 5/10ths multiplier is inappropriate in this case because they claim that plaintiffs originally alleged three claims, including the two above plus a claim that plaintiffs were paid by certain employers (not including these two defendants) as independent contractors in order to defeat the purposes of the FLSA. The court file reveals that the independent contractor issue was determined on summary judgment motions by Judge Burciaga in May 1994 after a hearing on January 13, 14, and 24, 1994. After carefully scrutinizing plaintiffs' billing entries, the Court concludes that plaintiffs did not request fees for any work associated with the independent contractor motions. In fact, there are entries missing for most of the month of December 1993, and early January 1994, which is the time frame during which the bulk of the work on the independent contractor issue would have fallen. In contrast, it is evident from the record that plaintiffs did submit billing entries for time spent on

Four-Way's summary judgment motion (filed March 15, 1993), and Foutz & Bursum's motion for summary judgment (filed April 15, 1993). Judge Burciaga held a hearing on these motions, among others, in September 1993. The billing entries for March-April, and September 1993 reflect work on these motions. It does not appear to the Court that plaintiffs are unfairly charging defendants for time spent on issues not related to Four-Way and Foutz & Bursum. The Court rejects defendants' arguments that billing time should be reduced to one-third, rather than one-half. It is clear that in May 1996, only two claims were submitted to the jury. (*See* Verdict Form). Since only one of these claims at trial was ultimately successful, it is appropriate to discount the trial work, and time spent for trial preparation, by 50% (plaintiffs do this by using a multiplier of .5).

Defendants also argue that a 5/10ths multiplier is inappropriate because the wage enhancement issue was the primary claim in plaintiffs' complaint and was substantially more complicated and time-consuming than the travel time issue. "There is no precise rule or formula for making these determinations." *Ramos*, 713 F.2d at 556. "A mathematical approach ignores many relevant factors, including the relative importance of the issues." *Id.* at 556 n.7. Defendants argue that the law related to travel time was not exceptionally complicated, primarily because there was very little law on this issue, and was a matter of first impression regarding these particular facts. In contrast, they argue that the wage apportionment claim was both factually and legally complicated. Defendants suggest that 3/4ths of the first trial was devoted to the wage enhancement issue, and 1/8th was devoted to the travel time issue, and 1/8th was devoted to general introductory matters. Thus, defendants argue that a 1/4 multiplier would be

18

more realistic. The Court declines to adopt defendants' allocation because it appears that plaintiffs' counsel devoted roughly equal time to the two issues.

### 2. Contingent Risk and Delay in Payment

Plaintiffs ask for a 50% enhancement of the fee award as compensation for the risk associated with taking a case on a contingency fee arrangement. To the extent that an enhancement for contingent risk is even allowed under the FLSA fee-shifting statute, the Court determines that plaintiffs have not met their burden in showing that such an adjustment to the lodestar amount should be made. *See City of Burlington v. Dague*, 505 U.S. 557, 562-67, 112 S.Ct. 2641-44 (1992). Plaintiffs also request an enhancement of the fee award for delay in payment. The Court declines to adjust the "lodestar" for this delay because current market rates have been used in calculating the "lodestar" fees. *See Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 773 (5th Cir. 1996).

### 3. Results

Defendants contend that the Court should reduce the lodestar amount because plaintiffs originally requested total damages of $272,528 against Foutz & Bursum, and the plaintiffs ultimate recovery was only 20% of this amount. Similarly, the plaintiffs originally sought damages of $163,108 against Four-Way, and plaintiffs ultimately recovered only 10% of this amount. Defendants request the Court to reduce plaintiffs' attorney fees by 75% to reflect the fact that plaintiffs' ultimate recovery was far less than the plaintiffs' original claims. However, this Court has already discounted plaintiffs' counsel's billing time for the first trial by 50% to account for plaintiffs' partial success. The Court concludes that a discount of 50% is appropriate. In addition, the Tenth Circuit has rejected the practice of reducing attorney fees

awards simply because the recovery of money damages in the suit was small compared to the attorney fees. *Ramos*, 713 F.2d at 557. Instead, the Court has stated that the amount of the monetary recovery is not as significant as the policy being vindicated. *Id.* The Tenth Circuit advised that district courts should instead consider whether the hours spent were reasonable or excessive under the circumstances. Because the Court has already examined the hours for excessiveness, the Court declines to reduce the fee award because of its "particular relationship to the amount of the monetary recovery." *Id.*

Accordingly, the Court calculates the award for fees as follows:

| Attorneys | Available Hours | Reasonable Hourly Rate | Fee |
|---|---|---|---|
| J. E. Gallegos | 83.33 | $230 | $19,1650.90 |
| Michael J. Condon | 189.805 | $180 | $34,164.90 |
| Michael L. Oja | 142.855 | $180 | $25,713.90 |
| David Sandoval | | $110 | $18,044.40 |
| Glenn Theriot | | $60 | $6,850.80 |
| Slate J. Stern | | $60 | $150.00 |
| K. Lee Peifer | 56.9 | $125 | $7,112.50 |
| Peifer's Associate | 14.0 | $100 | $1400.00 |
| David Mark | 88.05 | $180 | $15,849.00 |
| Paralegals/Staff | 104.14 | $50 | $5,207.00 |
| Totals | 1132.05 | | $133,658.40 |

## CONCLUSION

Based on the foregoing, the Court finds that plaintiffs are entitled to attorneys' fees in the amount of $133,658.40 against the defendants Four-Way Company, Inc., and Foutz &

Bursum Construction Company, jointly and severally. This amount represents the reasonable fees incurred to litigate this action under the FLSA. A separate order will be entered in conformity with this memorandum opinion.

DATED this 4th day of June, 1999.

BY THE COURT:

Lyle E. Strom, Senior Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN - 8 1999

*Robert M March*

CLERK

| | | |
|---|---|---|
| REX BAKER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIV. 93-140 BB/RLP |
| | ) | |
| v. | ) | |
| | ) | |
| BARNARD CONSTRUCTION CO., | ) | ORDER AND JUDGMENT |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to the memorandum opinion entered herein this date,

IT IS ORDERED that plaintiffs shall recover attorney fees in the above matter in

the amount of $133,658.40 against the defendants, Four-Way Company, Inc. and Foutz &

Bursum Construction Company, jointly and severally.

DATED this 4ᵗʰ day of June, 1999.

BY THE COURT:

LYLE E. STROM, Senior Judge
United States District Court

